UNITED STATES of America,
Plaintiff-Appellee,

v.

Archie Owen MURPHY,
Defendant-Appellant.

No. 72–1185.

United States Court of Appeals,
Sixth Circuit.

Nov. 7, 1972.

William P. Biddle, III, Athens, Tenn., for defendant-appellant; Higgins & Biddle, Athens, Tenn., on brief.

Carl P. McDonald, Knoxville, Tenn., for plaintiff-appellee; John L. Bowers, Jr., U. S. Atty., W. Lloyd Stanley, Jr., Asst. U. S. Atty., Chattanooga, Tenn., on brief.

Before PHILLIPS, Chief Judge, KENT, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

This is the appeal of Archie Owen Murphy from his conviction for transporting and possessing non-taxed distilled spirits. Murphy was a deputy sheriff of McMinn County, Tennessee. Joined in the indictment with appellant were the sheriff of the county and his chief deputy. Count I of the indictment charged a conspiracy, 18 U.S.C. § 371, between the above named county officers and five others, private entrepreneurs, to:

"defraud the United States by manufacturing, distilling, possessing, transporting, removing, depositing, concealing, and selling, distilled spirits on which a tax had not been paid with the intent to defraud the United States of said tax and to commit certain offenses against the laws of the United States pertaining to the illicit, unlawful and fraudulent manufacture, possession, transportation, distribution and selling of distilled spirits, * * *."

Some 30 overt acts were detailed in Count I, and Counts II to V charged various substantive offenses. In Count V it was charged that appellant Murphy on March 13, 1971,

"transported and possessed distilled spirits, to wit: 6 gallons more or less * * *."

The sheriff of the county was charged only in Count I—the conspiracy count—and was acquitted. The jury disagreed as to one of the alleged private participants. The chief deputy was convicted on Count I—conspiracy—and Count IV, a substantive violation. Three of the non-members of the sheriff's staff were convicted of conspiracy and all of the substantive charges against them, while a fourth had entered a plea of guilty to the charged conspiracy and the two substantive counts. He testified for the government.

Appellant Murphy was sentenced to a term of two years imprisonment, with the provision that "all but four (4) months of [the] sentence be suspended and defendant placed upon probation for a period of two years * * *."

The case was tried to a jury in the United States District Court for the Eastern District of Tennessee, Southern Division.

The appellant presents the following Statement of Issues for Review:

"1. The District Judge erred in not finding entrapment as a matter of law.

"2. The District Judge erred in overruling the Defendant's motion for a judgment of acquittal concerning the duties of the Defendant as a Deputy Sheriff as required by Tennessee Code Annotated § 57–604 on the question of intent to violate § 5205(a)(2) and § 5604(a)(1) of Title 26, United States Code.

"3. The District Judge erred in its charge to the jury concerning the failure of the Defendant to comply with the requirements of Tennessee Code Annotated § 57–602 et seq. requiring

Peace Officers to report confiscated whiskey.

"4. The Verdict is contrary to the weight of the evidence and is not supported by substantial evidence."

We believe that the following, set out in appellee's brief, is fairly supported by the testimony:

"On February 23, 1971 Strickland [one of the moonshiners] instructed Lane to contact Deputy Sheriff Archie Murphy and inquire about buying some jugs. Strickland gave Lane money to purchase gas. Pursuant to the request by Strickland, Lane proceeded to the McMinn County Jail and asked Chief Deputy Sheriff Roy Buttram if they had any jugs. Buttram stated that he would talk with Deputy Sheriff Archie Murphy about the jugs and for Lane to contact him later in the day. Lane contacted Deputy Sheriff Murphy by telephone and Murphy instructed Lane to get some large boxes and take them to the jail to remove the jugs. Strickland, King and Lane went to the jail and picked up the jugs and transported them to the distillery."

The evidence further showed that some time prior to the date of Murphy's alleged substantive offense he had gone to the home of Lane—the special undercover employee—and asked if Lane had any whiskey for him. Lane told him he had given 75 gallons to Chief Deputy Buttram and suggested that Murphy get some from that source. Murphy advised that he had tried but Buttram wouldn't give him any. Then Murphy said he would wait for the next run.

On March 13, 1971, appellant Murphy again went to the home of special employee Lane. There is some obscurity as to what brought about this arrival, but there was in Lane's house awaiting appellant some six gallons of moonshine whiskey. Lane testified that Murphy came to get the whiskey that one of the other conspirators had told him to give Murphy. Appellant tasted the whiskey and said, "Strickland makes good whiskey." Appellee's brief says:

"Murphy accepted the whiskey in payment for the jugs received by Strickland, King and Lane on an earlier date."

If indulging in such an inference was the only support for the illegality of Murphy's taking of the contraband, we would find it insufficient upon which to support the conviction. We find that such was not necessary.

Murphy and Lane took the six gallons of whiskey and loaded them into Murphy's car, and Murphy drove away.

Appellant testified in his defense, denying some of the foregoing and said that he took the six gallons of moonshine as a part of his plan to expose the illegal operation that was going on. He said he carried the whiskey in his car until the next day, when he removed it and placed it in the evidence room at the McMinn County Jail. Its final destination is not disclosed. Murphy did not arrest or prefer any charge against Lane, stating that he "didn't want to arouse suspicion because I figured if I did, why it would knock my chances of finding the still." It was his claim that he took the whiskey to assist in his enforcing the law in the performance of his duties.

At the time of the foregoing events, there was in Tennessee statutes T.C.A. § 57–607, which authorized a law enforcement officer to seize illegal intoxicating liquor and to deliver the same to the sheriff. Further, T.C.A. § 57–605 required that an officer making such a seizure file a report with the clerk of the criminal or circuit court. Both statutes are still in force. Murphy did not comply with the foregoing and testified that he did not know about these requirements.

We have at the foregoing length set out the proofs as to Murphy's involvement, believing that they establish the lack of merit in his various claims of error.

### 1. Entrapment as a matter of law.

The District Judge submitted the question of entrapment for the jury's consideration. The correctness of the style and content of the relevant instruction is not challenged. Where the evidence and the inferences that can properly be made therefrom are in conflict, the issue of entrapment is for the jury's resolution, United States v. Head, 353 F.2d 566, 568 (6th Cir. 1965). See also United States v. Osborn, 350 F.2d 497, 504 (6th Cir. 1965), affirmed, Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966). The evidence justified submitting the question to the jury.

### 2. Motion for Acquittal.

Appellant's brief states his point II as follows:

"II. Can a duly authorized law enforcement officer in the State of Tennessee be convicted of violating a revenue statute of the United States while in the performance of an affirmative duty required of law enforcement officers in the State of Tennessee."

To the extent that we understand this contention, we find it without merit. Murphy claims he seized the involved six gallons of moonshine in the performance of his statutory duty as a deputy sheriff to seize such contraband. The jury heard Murphy's evidence as to his reason for taking the six gallons of moonshine from the home of the special employee Lane. The jury evidently did not believe him. Upon the evidence before them, it was for the jury to determine the guilt or innocence of Murphy's intent when he took the whiskey. United States v. Levinson, 405 F.2d 971 (6th Cir. 1968).

### 3. The Court's charge.

The District Judge told the jury:

"Now members of the jury, this jury knows, without the Court telling them the Court as an abundant precaution, will tell the jury that an officer of the law has a right to confiscate illegal whiskey in the possession, unlawful possession of a citizen; but if that officer confiscated legally, legally confiscates that illegal whiskey, then he is required under the applicable Tennessee Statutes which has been referred to during this trial to report such confiscation to the proper officials."

The particular instruction was given after a special request was made to the court by appellant's counsel. No objection was made to it as required under Rule 30, Fed.R.Crim.P. It was appellant's theory that he had legally confiscated the "moonshine" but was unaware of the filing requirement of T.C. A. § 57–605 which calls for a written report. Appellant's theory together with the government's version of the case presented a factual question for resolution by the jury, United States v. Levinson, supra, 405 F.2d 971. The mere fact that appellant failed to make out the required report would not be evidence of guilt. However, it can be used to prove appellant's intent when he took possession of the "moonshine."

### 4. Weight of the evidence.

Appellant asserts that the jury's verdict was contrary to the weight of the evidence. We believe that our above recital of the evidence that brought Murphy into the total enterprise is sufficient answer to this contention. We follow the familiar rule of Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

"The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government to support it." 315 U.S. at p. 80, 62 S.Ct. at p. 469.

The fact that the jury acquitted Murphy of the conspiracy charged in Count I may present some inconsistency with his conviction of the substantive offense in Count V. Such inconsistency does not vitiate his conviction. Dunn v.

United States, 284 U.S. 390, 393–394, 52 S.Ct. 189, 76 L.Ed. 356 (1932); United States v. Booth, 454 F.2d 318, 321 (6th Cir. 1972); United States v. Bevins, 430 F.2d 601, 603 (6th Cir. 1970); United States v. Shipp, 359 F.2d 185 (6th Cir. 1966).

The judgment is affirmed.